UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, BOARD OF TRUSTEES, INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, BOARD OF TRUSTEES, NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND BOARD OF TRUSTEES, SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST, and the BOARD OF TRUSTEES, NATIONAL ENERGY MANAGEMENT INSTITUTE COMMITTEE, 8403 Arlington Boulevard, Suite 300 Fairfax, Virginia 22031  Plaintiffs,  v.  FAHRENHEIT MECHANICAL, LLC  120 Broadway, 36th Floor New York, NY 10271  Defendant. | CIVIL ACTION NO. 1:20-cv-431-LO-TCB  **Additional Required Service under 29 U.S.C. § 1132(h) to:**  **U.S. Department of Labor Attn: Assistant Solicitor  for Plan Benefits Security 200 Constitution Ave., N.W. Washington, DC 20002**  **U.S. Department of Treasury Attn: Secretary of the Treasury 1500 Pennsylvania Avenue, NW Washington, D.C. 20220** |

## AMENDED COMPLAINT

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and

1

the National Energy Management Institute Committee ("NEMIC" and together with NPF, ITI, SASMI, and SMOHIT, referred to as "the Funds"), hereby complain as follows:

## Introduction

1. This is a civil action brought by employee benefit plans/trust funds or joint labor management organizations, and by the Trustees of the Funds, pursuant to Sections 502(a)(3), (d)(1), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185. The Funds seek a monetary judgment against Defendant awarding delinquent contributions, accrued interest, liquidated damages, audit testing fees, exit contributions, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the Trust Document governing the Funds.

## Jurisdiction and Venue

2. Jurisdiction is conferred upon this Court by Sections 502(e), and (f) ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(c), as the Plaintiff Funds are administered in this district with their principal place of business in Fairfax, Virginia.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the

Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

## Parties

5.  Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

6.  Plaintiff Board of Trustees, International Training Institute of the Sheet Metal and Air Conditioning Industry ("ITI") is the collective name of the trustees of the International Training Institute of the Sheet Metal and Air Conditioning Industry. ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational

benefits to eligible employees. ITI is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). The Trustees of ITI are duly authorized Trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI. The Trustees of ITI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually and jointly referred to as "ITI" in this Complaint. ITI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

7. Plaintiff Board of Trustees, National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI") is the collective name of the trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund. SASMI is an employee welfare benefit plan within the meaning of Sections 3(1), (3) of ERISA, 29 U.S.C. § 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing benefits to eligible employees. SASMI is, and at all times material herein, has been a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trustees of SASMI are duly authorized Trustees whose duty it is to administer SAMSI for the benefit of the participants and beneficiaries of SASMI. The trustees of SASMI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its trustees and plan are individually or jointly referred to as "SASMI" in this Complaint. SASMI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

8.   Plaintiff Board of Trustees, Sheet Metal Occupational Health Institute Trust ("SMOHIT") is collectively the name of the trustees of the Sheet Metal Occupational Health Institute Trust. SMOHIT a jointly labor-management health and safety organization serving the sheet metal industry established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trust and its trustees are individually and jointly referred to as "SMOHIT" in this Complaint. SMOHIT is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

9.   Plaintiff Board of Trustees, National Energy Management Institute Committee ("NEMIC") is the collective name of the trustees of the National Energy Management Institute Committee. NEMIC is a labor management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that is funded by contributions under various collective bargaining agreements. The committee and its trustees are jointly and severally referred to as "NEMIC" in this Complaint. NEMIC is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

10.  The Trustees of the Plaintiff Funds bring this action in their collective names or, as necessary or appropriate, in the name of the respective trusts or plans, and their participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

11.  At all times relevant to this action, Defendant Fahrenheit Mechanical, LLC ("Fahrenheit"), has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Fahrenheit has been incorporated in the state of New York with a principal place of business at 120 Broadway, 36th Floor, New York, NY 10271.

## Factual Background

12. Defendant previously employed employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union No. 28 ("Local 28" or the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

13. Defendant was signatory to, and bound by, a collective bargaining agreement ("Agreement" or "CBA") with the Union. Pursuant to the Agreement, Defendant was obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, SASMI, SMOHIT, and NEMIC for all hours worked or paid on behalf of Defendant's covered employees within the jurisdiction of Local 28.

14. Pursuant to the Agreement, Defendant is obligated to abide by the terms and conditions of the Trust Agreement establishing the Fund, including any amendments thereto and policies and procedures adopted by the Board of Trustees ("Trust Agreement").

15. Payments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer. This is a self-reporting system and the Funds rely on the honesty and accuracy of the employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees.

16. Without the information contained in the remittance reports, the Funds cannot determine the entire amount of the monthly contributions due to the Funds or the employees' eligibility for benefits.

17.     The completed remittance reports and accompanying contribution payments must be submitted to the Funds no later than the twentieth (20th) day after the end of each month during which covered work was performed and are delinquent if received thereafter.

18.     Article V, Section 3 of the governing Trust Agreement and Section V of NPF's Procedures for the Collection of Contributions both provide that the Funds may audit a contributing employer for the purposes of assuring the accuracy of reports and ensuring that such employer has remitted the appropriate amount of contributions to the Funds.

19.     Article V, Section 6(a) of the governing Trust Agreement provides that a participating employer is liable for an exit contribution to the NPF if it: (i) ceases to have an obligation to contribute to the NPF, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute but was not required to pay withdrawal liability under Title IV of ERISA.

20.     Article V, Section 6(b) of the governing Trust Agreement provides that "[b]y agreeing to contribute, continuing to contribute, or continuing to be obligated to contribute, to the Fund, each Employer agrees to pay an exit contribution in accordance with this Section 6. The Employer's obligation to pay an exit contribution under this Section 6 is independent of the Employer's collective bargaining agreement and continues to apply after the termination of the collective bargaining agreement (notwithstanding any language to the contrary in the collective bargaining agreement)."

21.     The amount of an employer's exit contribution is equal to the amount of the employer's contributions due for the 36-month period preceding the month in which the employer ceased to have an obligation to contribute to the NPF.

22. Pursuant to Article V, Section 6(e) of the Trust Agreement, an exit contribution is required to be paid to the NPF no later than the 20th day of the month following the month in which the Fund assessed the exit contribution by sending written demand for the payment of the employer's exit contribution.

23. Pursuant to Article V, Section 6(g) of the Trust Agreement, an exit contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an employer's failure to make an exit contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution.

24. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, the Agreement, the Trust Agreement, and Section 301 of the LMRA, 29 U.S.C. § 185, if Defendant fails to timely submit contribution payments, including an exit contribution, and the Fund files a lawsuit to recover the unpaid contributions, including an exit contribution, Defendant is required to pay the following amounts to the Fund:

   a. Interest on the delinquent contributions at a rate of 0.0233% per day, compounded daily;

   b. Liquidated damages equal to the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions that the Company fails to pay within 30 days after the due date, but pays before any lawsuit is filed;

   c. Liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and

   d. The attorneys' fees and costs incurred by the Fund in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

25. For the period of April 2018 through October 2019, Defendant employed employees within the jurisdiction of Local 28 for whom contributions were owed to the Funds and failed to make all the required contributions, despite their obligation to do so under the Agreement, Trust Documents, Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

26. Additionally, the NPF's records show that Fahrenheit ceased to have an obligation to contribute to the NPF and had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute as of January 1, 2020 but was not required to pay withdrawal liability under Title IV of ERISA. Therefore, Fahrenheit owes an exit contribution pursuant to Article V, Section 6(a) of the governing Trust Agreement.

27. To date, Fahrenheit has failed to pay the delinquent contributions for the period of April 2018 through October 2019 or the owed exit contribution and therefore owes interest and liquidated damages on the outstanding contributions.

## Count I

*Amounts Owed Pursuant to Audit*

28. Plaintiffs reallege and incorporate Paragraphs 1 through 27.

29. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

30. Defendant is obligated, under the terms of the Agreement, to provide contributions to the Funds on behalf of its covered employees. Fahrenheit has failed and refused to fulfill its contractual obligations for owed contributions and resulting interest and liquidated damages as demonstrated by a payroll audit conducted on Fahrenheit by the Funds for the period of April 2018 through October 2019. The audit revealed that Defendant owes contributions, interest, and liquidated damages to the Funds. While contributions remain unpaid, interest continues to accrue

on these delinquent contributions and audit fees have been assessed pursuant to the Funds' governing documents.

31. The audit revealed that Fahrenheit owes contributions in the amount of $144,386.37 for the period of April 2018 through October 2019. In addition to the contribution amounts found due, Fahrenheit owes $19,801.86 in interest (calculated through August 31, 2020), $28,877.27 in liquidated damages, and $1,230.00 in audit testing fees. In total, Fahrenheit owes $194,295.50 to the Funds for unpaid contributions, interest, liquidated damages, and testing fees.

32. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g), Plaintiffs are entitled to recover all costs of this action from Defendant, including reasonable attorneys' fees and court costs.

33. Prior to commencing this lawsuit, the Funds sent letters and attempted to directly contact Defendant to obtain the outstanding contributions from Defendant. Defendant has not paid the amounts due.

34. Defendant's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Funds, endangered the eligibility of covered members' pension benefits, and other harm. Defendant's failure and refusal to comply with their obligations creates an atmosphere in the industry that encourages other employers to do the same

## Count II
*NPF's claim for Exit Contribution*

35. Plaintiffs reallege and incorporate Paragraphs 1 through 34.

36. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

37. Fahrenheit is obligated under the terms of the CBA, Trust Agreement, and Section 515 of ERISA to pay an exit contribution as Fahrenheit (i) ceased to have an obligation to contribute to the NPF, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute, but was not required to pay withdrawal liability under Title IV of ERISA.

38. Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, and Article V, Section 6 of the Trust Agreement, Fahrenheit's obligation is independent of the CBA and continues to apply after the termination of its obligation to contribute notwithstanding any language to the contrary.

39. As of January 1, 2020, Fahrenheit ceased to have an obligation to contribute to the NPF and continued to perform work in the jurisdiction of the Agreement of the type for which contributions were previously required. This constituted a withdrawal under Title IV of ERISA, but Fahrenheit was not required to pay withdrawal liability under ERISA's *de minimis* rule. Accordingly, Fahrenheit is liable for an exit contribution.

40. The exit contribution is equal to the contributions due from Fahrenheit for the 36-month period preceding the month in which it ceased to have an obligation to contribute to the NPF.

41. On December 12, 2019, via letter sent to Defendant, the NPF assessed an exit contribution against Fahrenheit in the amount of $232,756.45. The audit for the period of April 2018 through October 2019 discussed above was completed after the original exit contribution assessment. As the audit found that additional contributions were owed during the 36-month period preceding Fahrenheit's withdrawal, the Fund revised the exit contribution assessment. By letter dated March 2, 2020, Fahrenheit was notified that the exit contribution had been revised to $348,051.19.

42. To date, Fahrenheit has failed to pay any portion of the exit contribution due to the Fund, despite its obligation to do so under the CBA, the Trust Agreement, and Section 515 of ERISA, 29 U.S.C. § 1145.

43. Pursuant to Article V, Section 6(g) of the Trust Agreement, an exit contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an employer's failure to make an exit contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution. Accordingly, Fahrenheit owes interest on the unpaid exit contribution in the amount of $13,885.13 (through August 31, 2020) and liquidated damages in the amount of $69,610.24 (calculated as the greater of interest on the delinquent contributions or twenty percent (20%) of the delinquent exit contributions). Fahrenheit owes a total of $431,546.56 as a result of failing to pay the exit contribution. While the exit contribution remains unpaid, interest continues to accrue on the delinquent exit contribution.

44. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g) and the Trust Agreement, Plaintiffs are entitled to recover all costs of this action from Fahrenheit, including reasonable attorneys' fees and court costs.

45. Prior to commencing this lawsuit, the Fund sent letters and directly contacted Defendant to obtain the outstanding exit contribution. To date, Defendant has not made any arrangements to remit the outstanding exit contribution, and there is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligation to the Fund.

46. Fahrenheit's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the NPF, endangered the eligibility of covered members' pension benefits, and other harm. Defendant's failure and refusal

to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same

**WHEREFORE**, Plaintiffs request a judgment against Defendant for all amounts due to the Fund as follows:

1. Declare that Defendants are delinquent in remitting owed contributions to the Funds pursuant to the Agreement;

2. Declare that Defendant is delinquent in remitting the owed exit contribution to the NPF pursuant to the CBA and Trust Agreement;

3. Award Plaintiffs on behalf of the Funds a judgment for Defendant's delinquent contributions found to be due by the audit for the period of April 2018 through October 2019 in the total amount of $144,386.37;

4. Enter judgment against Defendant for interest on all delinquent contributions found due by audit at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment in the amount of at least $19,801.86;

5. Enter judgment against Defendant for liquidated damages in an amount equal to the greater of interest on the delinquent contributions found due by audit calculated at the above rate, or 20% of the delinquent contributions in the amount of $28,877.27;

6. Enter judgment against Defendant for audit testing fees in the amount of $1,230.00;

7. Award NPF a judgment for Defendant's delinquent exit contribution in the amount of $348,051.19;

8. Enter judgment against Defendant for interest on the exit contribution at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment in the amount of at least $13,885.13;

9. Enter judgment against Defendant for liquidated damages in an amount equal to the greater of interest on the exit contribution calculated at the above rate, or 20% of the exit contribution in the amount of at least $69,610.24;

10. Enter judgment for all attorneys' fees and costs incurred by the Fund in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

11. Award such other relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Diana M. Bardes
Diana M. Bardes
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile
dbardes@mooneygreen.com
Counsel for Plaintiff

Dated: August 27, 2020

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

I hereby certify that on this 26th day of August, 2020, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

                                                          /s/ Diana M. Bardes
                                                          Diana M. Bardes