## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, *et al.*, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. 1:20-cv-431 (LO/TCB) |
| FAHRENHEIT MECHANICAL, LLC, | ) ) ) |  |
| Defendants. | ) ) |  |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiffs' Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55(b) (Dkt. 22).[1] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiffs' motion.

### I. BACKGROUND

#### A.    Procedural Posture

Plaintiffs, the respective Boards of Trustees for the Sheet Metal Workers' National Pension Fund; International Training Institute for the Sheet Metal and Air Conditioning Industry; National Stabilization Agreement for the Sheet Metal Industry Trust Fund, the Sheet Metal Workers' Occupational Health Institute Trust, and the National Energy Management Institute Committee (collectively, "the Funds" or "Plaintiffs"), filed this lawsuit on April 17, 2020 against

---

[1] The relevant filings before the Court include Plaintiffs' Amended Complaint ("Compl.") (Dkt. 11); Plaintiffs' Motion for Default Judgment ("Mot. Default J.") (Dkt. 22); Brief in Support of Plaintiffs' Motion for Default Judgment ("Mem. Supp.") (Dkt. 23); Declaration of Kenneth Anderson Jr. ("Anderson Decl.") (Dkts. 23-1); Declaration of Diana M. Bardes ("Bardes Decl.") (Dkt. 23-2); and all attachments and exhibits submitted with those filings.

Defendant Fahrenheit Mechanical, LLC ("Fahrenheit" or "Defendant") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1332(a)(3), (d)(1), (g)(2), and 1145, and the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185. (Dkt. 1.) Plaintiffs filed an amended complaint on August 27, 2020. (Dkt. 11.) The Funds seek to collect a monetary judgment consisting of delinquent contributions, accrued interest, liquidated damages, audit testing fees, exit contributions, and attorneys' fees and costs pursuant to ERISA, the LMRA, a collective bargaining agreement ("CBA") between Fahrenheit and the International Association of Sheet Metal, Air, Rail, and Transportation Workers f/k/a the Sheet Metal Workers' International Association, Local Union No. 28, and the Trust Document governing the Funds. (Compl. ¶ 1; Mem. Supp. at 1.)

Defendants have failed to appear in this matter or otherwise respond to Plaintiffs' Complaint or Amended Complaint. (Mot. Default J. ¶ 4.) After the Clerk entered default against Defendants on November 24, 2020 (Dkt. 21), Plaintiffs filed the instant motion, accompanying memorandum, declarations, and supporting documentation (Dkts. 22-23). Plaintiffs initially noticed a hearing for December 18, 2020. (Dkt. 24.) Due to the COVID-19 pandemic, on November 27, 2020, the undersigned entered an order stating:

> [T]o proceed as cautiously and safely as possible, the Court will not hold a hearing on this matter. Instead, the Court will allow any interested party to file an objection within twenty (20) days of the date of this Order. Accordingly, any objections to Plaintiff's motion for default judgment are to be filed with the Clerk's office by Thursday, December 17, 2020 at 5:00 p.m. The undersigned will then issue a Report and Recommendation concerning the default judgment without a hearing.

(Dkt. 25.)

No interested party filed a timely objection. Accordingly, the undersigned issues this Report and Recommendation to address Plaintiffs' motion for default judgment.

### B.      Jurisdiction and Venue

Before the Court can enter default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue.

First, the undersigned finds that this Court has proper subject-matter jurisdiction. A federal district court has subject-matter jurisdiction over ERISA and LMRA actions pursuant to the jurisdictional provisions in both statutes. *See* 29 U.S.C. § 1132(e)-(f) (conferring jurisdiction on the federal district court in the judicial district "where the plan is administered," regardless of the amount in controversy); 29 U.S.C. § 185(c) (conferring jurisdiction in cases by labor organizations on the federal district court in the judicial district where the labor organization "maintains its principal office" or in which "its duly authorized officers or agents are engaged in representing or acting for employee members"). Further, a federal district court has original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In this case, Plaintiffs asserted claims pursuant to ERISA and the LMRA, both of which are federal statutes. (*See* Compl. ¶ 1.) Furthermore, the Funds are administered in Fairfax, Virginia. (*Id.* ¶¶ 3, 5-9.) This Court accordingly has subject-matter jurisdiction over the claims in this action.

Second, this Court has personal jurisdiction over Defendant. Due to ERISA's nationwide service of process provision, personal jurisdiction is proper if the defendants have sufficient national contacts with the United States and it comports with the Fifth Amendment. *See* 29 U.S.C. 1132(e)(2); *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443-44 (4th Cir. 2015) (citation omitted) ("Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth

Amendment."); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. 1997). Here, as discussed more below, Plaintiffs served Defendants pursuant to Federal Rule of Civil Procedure 4 and ERISA's nationwide service of process provision. (*See* Dkt. 19.) Further, Defendant is incorporated in New York and its principal places of business is at 120 Broadway, 36th Floor, New York, NY 10271. (Compl. ¶ 11.) Therefore, Defendant has sufficient national contacts with the United States and this Court has personal jurisdiction over it.

Lastly, the undersigned finds that venue is proper in this Court. For ERISA and LMRA actions, venue is proper in the federal judicial district where the plan is administered. *See* 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered."); 29 U.S.C. § 185(c) (in proceedings brought by labor organizations, "district courts shall be deemed to have jurisdiction. . . in the district in which such organization maintains its principal office"). Here, venue is proper because the Funds are administered within the Eastern District of Virginia. (Compl. ¶¶ 3, 5-9; Anderson Decl. ¶ 4.) Moreover, venue is proper in a federal judicial district in which a substantial part of the events or omissions giving rise to the action occurred. *See* 28 U.S.C. § 1391(b)(2). Here, venue is also proper in this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. (*See* Compl. ¶ 3.)

## C.   Service of Process

Lastly, before the Court can render default judgment, it must be satisfied that the defaulting parties have been properly served. Here, on October 27, 2020, Plaintiff's process server served Defendant by giving the summons, Complaint, and related materials to Omar Merchant, the chief financial officer of Fahrenheit, who was designated to accept service of

4

process on behalf of Defendants. (Dkt. 19; Mot. Default J. ¶ 3.) The undersigned finds that Plaintiff's service comports with Federal Rule of Civil Procedure 4(c) and (h)(1)(B), and therefore Defendant was properly served.

## II. FINDINGS OF FACT AND PROPOSED FINDINGS OF LAW

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Based on the Amended Complaint, Plaintiffs' Motion for Default Judgment and the supporting Memorandum, the Declaration of Kenneth Anderson Jr., the Declaration of Diana M. Bardes, and the supporting documents submitted with these filings, the undersigned makes the following findings of fact and proposed findings of law.

### A.    The Parties

Plaintiffs are either employee-benefit plans/trust funds within the meaning of ERISA or joint labor-management organizations that provide benefits to certain collectively-bargained sheet-metal workers. (Compl. ¶¶ 5-9; Anderson Decl. ¶ 4.) The Funds are all administered out of offices located in Fairfax, Virginia. (Compl. ¶¶ 5-9; Anderson Decl. ¶ 4.) Plaintiffs' trustees

collectively brought this lawsuit in the name of the respective trusts or plans on behalf of their participants and beneficiaries pursuant to Federal Rule of Civil Procedure 17. (Compl. ¶ 10.)

Defendant is a New York limited liability company with its principal place of business in New York. (Compl. ¶ 11.) Defendant is an employer within the meaning of 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5) and has engaged in an industry affecting commerce within the meaning of ERISA, 29 U.S.C. §§ 1002(11) and (12). (*Id.*)

### B.   Defendant's Obligations

1.   *Defendants' Payment Obligations*

Defendant entered into a collective bargaining agreement (CBA) with Local 28, which represented Defendant's employees for purposes of collective bargaining. (Compl. ¶¶ 12-13.) Local 28 is a labor organization representing employees in an industry affecting interstate commerce. (Compl. ¶ 12.) The original CBA was effective for a period of August 1, 2014 through July 31, 2017. (Anderson Decl. ¶ 5, Ex. 1.) Local 28 then entered into a successor CBA effective from August 1, 2017 through July 31, 2020 through a Memorandum of Agreement. (Anderson Decl. ¶ 5, Ex. 2.) Defendant executed a Memorandum of Understanding on April 18, 2018 binding it to the successor CBA. (*Id.*, Ex. 3.) Pursuant to the CBA, Defendant had to submit monthly remittance reports and fringe benefit contributions to the Funds for all hours paid on behalf of its covered employees within the jurisdiction of Local 28. (Compl. ¶ 14; Anderson Decl. ¶ 7, Exs. 1-2.) Moreover, Defendants were obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, as well as any policies or procedures adopted by the Funds (collectively, the "Trust Agreement"). (Compl. ¶ 14; Anderson Decl. ¶ 8.)

Here, Defendant was first obligated to pay an exit contribution to the NPF pursuant to the CBA, Trust Document, ERISA, and the LMRA. By signing a CBA with the NPF, an employer

agrees to pay an exit contribution to the Fund under certain conditions. (Compl. ¶ 19; Anderson Decl. ¶ 14.) Specifically, the Trust Document provides that any participating employer is liable for an exit contribution if it (1) ceases to have an obligation to contribute to the NPF and (2) had an "event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute but was not required to pay withdrawal liability under Title IV of ERISA." (Compl. ¶ 19; Anderson Decl. ¶ 14.) This obligation exists independent of a CBA and continues to exist even after termination of a CBA. (Compl. ¶ 20; Anderson Decl. ¶¶ 15-16.) In other words, if a CBA expires and the employer is no longer required to pay contributions to the NPF, and the employer never entered into a successive CBA, the employer is obligated to pay an exit contribution. (Compl. ¶¶ 20-21; Anderson Decl. ¶¶ 15-16.)

The exit contribution is equal to the amount of the employer's contributions due for the thirty-six (36)-month period preceding the month in which the employer's obligation ceased. (Compl. ¶ 21; Anderson Decl. ¶ 17.) An employer must pay the exit contribution no later than the twentieth day of the month following the month in which the Fund assessed the contribution and sent a written demand for payment. (Compl. ¶ 22; Anderson Decl. ¶ 18.) An employer's failure to timely pay an exit contribution is treated like any other delinquent contribution under the Trust Agreement. (Compl. ¶ 23; Anderson Decl. ¶¶ 19, 27.)

Second, under the CBA, Trust Agreement, ERISA, and the LMRA, if Defendants fail to timely submit a required contribution (including an exit contribution), and the Funds file a lawsuit to recover the unpaid contributions, Defendants are contractually obligated to pay the following:

(1)    $144,386.37 in contributions due by audit pursuant to 29 U.S.C. §§ 1132 and 1145 and 29 U.S.C. § 185;

(2)    $23,366.08 in interest calculated at the rate of 0.0233% per day, compounded daily, on the delinquent contributions pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185;

(3)    $28,877.27 in liquidated damages at a rate of 20% of the delinquent contributions amount calculated at a rate of 20% pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185;

(4)    $1,230.00 in audit testing fees pursuant to 29 U.S.C. §§ 1132 and 1145 and 29 U.S.C. § 185;

(5)    $348,051.19 in Defendant's unpaid exit contribution pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185;

(6)    $21,636.15 in interest calculated at the rate of 0.0233% per day, compounded daily, on the delinquent contributions (through November 30, 2020) pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185; and

(7)    $69,610.24 in liquidated damages on the unpaid exit contribution pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185.

(Mem. Supp. at 11; Anderson Decl. ¶¶ 25-29.) These amounts total $637,157.30.

ERISA further provides that an employer "who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a [CBA] shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When an employer fails to make required contributions due under a CBA, ERISA outlines the damages that a court must impose on the employer. 29 U.S.C 1132(g)(2). Specifically, the Court "shall" award:

(A)    the unpaid contributions,

(B)    interest on the unpaid contributions,

(C)    an amount equal to the greater of—
          (i) interest on the unpaid contributions, or
          (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)    such other legal or equitable relief as the court deems appropriate.

*Id.*

Lastly, the LMRA also provides that federal courts can provide redress for an employer's breach of a CBA. *See* 29 U.S.C. 185(a). The LMRA provides for the enforcement of labor contracts—including provisions for interest and liquidated damages provided for by a CBA or a trust agreement incorporated into the CBA—that go beyond what ERISA expressly authorizes. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, No. 1:08cv15 (JCC), 2008 WL 640252, at *3 (E.D. Va. Mar. 5, 2008) (citing *Keffer v. H.K. Porter Co.*, 872 F.2d 60 (4th Cir. 1989)). In other words, between ERISA and the LMRA, Plaintiffs can sue to enforce the terms of the CBAs and obtain relief for Defendant's nonpayment.

### 2.   *Defendants' Unpaid Contributions*

Despite the obligations outlined above, the undersigned finds that Defendants failed to submit the required exit contribution to the Funds under the terms of the CBA and Trust Document. (Mot. Default J. ¶ 5; Compl. ¶¶ 27, 30; Anderson Decl. ¶ 25-27.) Specifically, Plaintiffs allege that Defendant's obligation to pay contributions to the NPF ceased on January 1, 2020 because the NPF terminated Fahrenheit's status as a contributing employer. (Anderson Decl. ¶ 23.) This constituted an event of withdrawal under Title IV of ERISA, but Defendant was not required to pay withdrawal liability under ERISA. (*Id.*) Therefore, Defendant was required to pay an exit contribution totaling $232,756,45. (*Id.*) On December 12, 2019, the NPF notified Defendant of the exit contribution assessment and demanded payment by February 20, 2020 (the twentieth day of the month following the month in which the NPF assessed the contribution). (*Id.* ¶ 24.) Then, on March 2, 2020, the NPF notified Defendant that the exit contribution aount had been revised to $348,051.19. (Anderson Decl. ¶ 25, Ex. 8.) Defendant never paid the exit contribution. (*Id.*)

Because Defendants failed to pay, Plaintiffs are also entitled to interest and liquidated

damages pursuant to ERISA and the Trust Document, which treats an exit contribution like any other delinquent contribution within the meaning or ERISA. (Anderson Decl. ¶ 26; Mem. Supp. at 11; *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 147 n.15 (4th Cir. 2019) (treating an exit contribution as any other delinquent contribution under ERISA)). Accordingly, Plaintiffs allege that they are entitled to:

(1) $144,386.37 in contributions due by audit pursuant to 29 U.S.C. §§ 1132 and 1145 and 29 U.S.C. § 185;

(2) $23,366.08 in interest calculated at the rate of 0.0233% per day, compounded daily, on the delinquent contributions pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185;

(3) $28,877.27 in liquidated damages at a rate of 20% of the delinquent contributions amount calculated at a rate of 20% pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185;

(4) $1,230.00 in audit testing fees pursuant to 29 U.S.C. §§ 1132 and 1145 and 29 U.S.C. § 185;

(5) $348,051.19 in Defendant's unpaid exit contribution pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185;

(6) $21,636.15 in interest calculated at the rate of 0.0233% per day, compounded daily, on the delinquent contributions (through November 30, 2020) pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185; and

(7) $69,610.24 in liquidated damages on the unpaid exit contribution pursuant to 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185.

(Mem. Supp. at 11; Anderson Decl. ¶¶ 25-29.) These amounts total $637,157.30.

## C. Attorneys' Fees and Costs

Lastly, Plaintiffs seeks attorneys' fees and costs in the total amount of $7,086.70 pursuant to ERISA, 29 U.S.C. § 1132(g)(2), and the Trust Agreement. (Compl. ¶ 44; Mem. Supp. at 12; Bardes Decl. ¶ 4; *see* 29 U.S.C. § 1132(g)(2) ("[T]he court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant.").) Plaintiffs seek this amount based on (1) $6,047.50 in attorneys' fees and (2) $1,039.20 in costs. (Bardes Decl. ¶¶ 5-6.)

First, Plaintiffs seek $56,047.50 in attorneys' fees based on 29.9 hours of billable work. (*Id.* ¶ 5.) In this matter, partners billed rates of $275.00 per hour. (*Id.* ¶ 5.) Paralegals billed at a

rate of $150.00 per hour. (*Id.*) Counsel spent time drafting and filing the complaint and amended complaint, arranging for service of process, drafting and filing the clerk's entry of default, and drafting the instant motion and supporting documents. (*Id.*) In support of this request, Plaintiffs' counsel submitted an itemized chart outlining the legal services performed and the time spent on each item. (*Id.*, Ex. 1.) Upon review of the submitted billing entries, the undersigned finds that the number of hours counsel expended on the matter is reasonable. Further, the undersigned finds that the hourly rates are consistent with reasonable rates charged in the Eastern District of Virginia for like matters. (*See id.* ¶¶ 8-10, Exs. 2-4.)

Second, Plaintiffs seek $1,039.20 in costs, which include (1) $639.20 in process-server fees and (2) $400.00 in filing fees. (*Id.* ¶ 6.) Upon review of counsel's submissions, the undersigned finds it appropriate to award Plaintiffs' requested attorneys' fees and costs.

## IV. REQUESTED RELIEF

As outlined above, Plaintiffs request that the Court (1) enter default judgment against Defendant Fahrenheit Mechanical, LLC in the amount of $637,157.30 and (2) award Plaintiffs attorneys' fees and costs totaling $7,086.70.

## V. RECOMMENDATION

Upon review of the entire record in this matter, the undersigned recommends that the Court enter an order (1) granting Plaintiff's motion for default judgment; (2) entering judgment in the amount of $637,157.30 against Defendant, plus additional interest from the date of judgment through the date of payment; and (3) entering judgment against Defendant for $7,086.70, consisting of Plaintiffs' attorneys' fees and costs incurred in pursuing this matter.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within

fourteen (14) days of its service. Failure to object to this Report and Recommendation waives

appellate review of any judgment based on it.

/s/

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

December 18, 2020
Alexandria, Virginia